IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

KEEVIN BARKHOFF,

Plaintiff,

vs.

BOSSARD NORTH AMERICA, INC.,

Defendant.

No. C09-2007

RULING ON MOTION FOR
SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.    INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

II.   PROCEDURAL BACKGROUND  . . . . . . . . . . . . . . . . . . . . . .  2

III.  RELEVANT FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

IV.   LEGAL STANDARD FOR SUMMARY JUDGMENTS  . . . . . . . . . . . . .  8

V.    DISCUSSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
      A.   Sexual Harassment and Retaliation Claims . . . . . . . . . . . . . . .  10
      B.   Age Discrimination  . . . . . . . . . . . . . . . . . . . . . . . . . .  11
           1.   Direct Evidence  . . . . . . . . . . . . . . . . . . . . . . . .  11
           2.   Circumstantial Evidence . . . . . . . . . . . . . . . . . . . . .  13
                a.   Barkhoff's prima facie Case . . . . . . . . . . . . . . . .  14
                b.   Bossard's Legitimate Non-Discriminatory Reason  . . .  15
                c.   Pretext . . . . . . . . . . . . . . . . . . . . . . . . . .  15
           3.   Barkhoff's State Age Discrimination Claim  . . . . . . . . . . .  18
      C.   Sex Discrimination  . . . . . . . . . . . . . . . . . . . . . . . . . .  19
           1.   Direct Evidence  . . . . . . . . . . . . . . . . . . . . . . . .  20
           2.   Circumstantial Evidence . . . . . . . . . . . . . . . . . . . . .  20
                a.   Barkhoff's Prima Facie Case  . . . . . . . . . . . . . . .  20
                b.   Bossard's Legitimate Non-Discriminatory Reason  . . .  22
                c.   Pretext . . . . . . . . . . . . . . . . . . . . . . . . . .  23

VI.   CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

VII.  ORDER  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

## I. INTRODUCTION

This matter comes before the Court on the Motion for Summary Judgment (docket number 13) filed by Defendant Bossard North America, Inc. on December 14, 2009; the Resistance (docket number 16) filed by Plaintiff Keevin Barkhoff on January 7, 2010; and the Reply (docket number 20) filed by Defendant on January 20, 2010. Pursuant to Local Rule 7.c, the Motion for Summary Judgment will be decided without oral argument.

## II. PROCEDURAL BACKGROUND

Plaintiff Keevin Barkhoff ("Barkhoff") timely filed charges of age and sex discrimination in employment against Defendant Bossard North America, Inc. with the Iowa Civil Rights Commission ("ICRC"). The charges were also cross-filed with the Equal Employment Opportunity Commission ("EEOC"). On November 20, 2008, the ICRC issued an Administrative Release (right-to-sue letter) to Barkhoff with respect to her charges of age and sex discrimination. On December 23, 2008, the EEOC also issued Barkhoff a Notice of Right to Sue.

On February 13, 2009, Barkhoff filed a Complaint and Demand for Jury Trial (docket number 2) alleging age discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.* (Count I), age discrimination in violation of the Iowa Civil Rights Act ("ICRA"), Iowa Code Chapter 216 (Count II), sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Count III), and sex discrimination in violation of the ICRA, Iowa Code Chapter 216 (Count IV). On March 23, 2009, Defendant filed an Answer and Demand for Jury Trial (docket number 5), generally denying the material allegations contained in the complaint, and asserting certain affirmative defenses. On May 19, 2009, both parties consented to proceed before a United States Magistrate Judge, pursuant to the provisions set forth in 28 U.S.C. § 636(c). Trial is scheduled before the undersigned on April 19, 2010. Defendant filed the instant Motion for Summary Judgment (docket number 13) on December 14, 2009.

## III. RELEVANT FACTS

Defendant Bossard North America, Inc. is based in Cedar Falls, Iowa, and is engaged in the business of procuring and selling fasteners and fastening technology to manufacturers. Bossard North America, Inc. is part of the Bossard Group, a global group of companies engaged in the procurement and sale of every type of fastening element. The Bossard Group holding company, Bossard Holding AG, is headquarted in Zug, Switzerland.

Before her termination, Plaintiff Keevin Barkhoff was an employee of Defendant Bossard North America, Inc. ("Bossard") for approximately twenty-three years. She began working for Bossard's predecessor company, Iowa Industrial Products, Inc. ("IIP"), in October 1985. Bossard acquired IIP in 1999[1].

When she started working at IIP, Barkhoff described her job as helping customers purchase fasteners and performing customer service follow-up. After acquiring IIP, Bossard implemented a new purchasing philosophy, made changes to the overall purchasing process and purchasing practices, put into operation new systems, and restructured job descriptions. In February 2001, Barkhoff's position with Bossard was entitled Purchasing Agent. As a Purchasing Agent, Barkhoff was required to coordinate activities involved with procuring goods and services for specific accounts. In January 2006, Barkhoff's position changed to Material Planner. In her position as Material Planner, Barkhoff was required her to analyze customer demand and take action to procure needed materials or adjust purchases to minimize a customer's exposure to excess inventory. Later, Bossard phased out the Material Planner position, and in May 2007, Barkhoff's position changed to Buyer.[2]

---

[1] Apparently, Bossard did not change IIP's name when it first acquired it in 1999. In 2001, IIP's name was changed to Bossard IIP, Inc. In 2007, Bossard IIP, Inc. was changed to its current name Bossard North America, Inc.

[2] Neither party explicitly describes the duties of a buyer, however, Barkhoff explains that:

(continued...)

Beginning in July 2005, Barkhoff's supervisor, Rick Nolan ("Nolan"), asked Barkhoff about her retirement plans three to four times per year.[3] Nolan also asked Barkhoff about her retirement plans in 2003 and 2004, but for training purposes only. According to Barkhoff, she did not find Nolan's 2003 and 2004 inquiries to be discriminatory because he was asking about her retirement plans for business reasons. Barkhoff found Nolan's 2005 and subsequent inquiries discriminatory, however, because she felt that his retirement questions were made in a suggestive or encouraging manner.[4]

In June 2005, Barkhoff received a salary increase of 1.94%. She did not receive any raises or salary adjustments after 2005. In 2006 and 2007, Barkhoff asked Nolan why she did not receive any increase in her level of compensation. According to Nolan, he explained to Barkhoff in both 2006 and 2007, that based on merit and the fact that she already earned more than the other employees in her department, she would not receive

---

[2](...continued)

> Over the years of my employment, whether it was with IIP or Bossard, I carried out the same basic responsibilities, along with all of the other buyers. We would be responsible for seeing that purchase orders were properly completed and the customers' accounts were serviced. Over the years, there were changes in the products, company organizational structure and the office technology, but the basic duties and responsibilities remained pretty much the same. I considered myself to be a buyer during most if not all of my employment.

See Appendix to Plaintiff's Resistance to Defendant's Motion for Summary Judgment (docket number 16-4) at 1-2; Affidavit of Keevin Barkhoff, ¶ 6.

[3] The Court reviews the evidence in the light most favorable to Barkhoff, the non-moving party. *Baker v. Silver Oak Senior Living Management Co., L.C.*, 581 F.3d 684, 685 (8th Cir. 2009).

[4] *See* Plaintiff's Statement of Additional Material Facts in Resistance to Defendant's Motion for Summary Judgment (docket number 16-3) at 1, ¶ 5; *see also* Appendix to Plaintiff's Resistance to Defendant's Motion for Summary Judgment (docket number 16-4) at 3; Affidavit of Keevin Barkhoff, ¶ 13 ("He seemed to be encouraging me to retire by his comments.").

any type of raise.[5]  Barkhoff claims, however, that Nolan only told her that she earned more than anyone else in the department, and she would never receive another raise[6].

In 2007, Barkhoff was disciplined twice for insubordination.  Specifically, on February 7, 2007, Barkhoff was suspended for one day without pay for refusing to obey

---

[5] *See* Bossard's Statement of Material Facts in Support of Summary Judgment Motion (docket number 13-1) at 12, ¶ 62.  In his deposition, Nolan stated:

Q:  Did you ever have any conversation with [Barkhoff] about the fact that she had no increase in compensation in 2006 and 2007?

A:  I did meet with [Barkhoff] to discuss her pay status for those years, yes. . . .

Q:  Did she express concern about the fact that she had gone and essentially had her compensation frozen beginning -- or dating back to June of 2005?

A:  She did express that concern.

Q:  And what did you tell her about that?

A:  After discussion with my boss regarding her rate of pay, we had decided that we did not have funds available to give her a raise.  Based on merit and her current pay status, that she wasn't going to be eligible for a raise that calendar year.

Q:  Did you tell her that based on the level of her compensation compared with other people in the department, she wasn't eligible for a raise?

A:  I think we -- I think we discussed that her rate was much higher than everyone else's.  I don't know that I put it like that.

Q:  So the fact that her rate was much higher was a factor that you expressed to her as a justification for not getting any more increases.

A:  It was part of the decision, yes.

*See* Bossard's Appendix to Defendant's Motion for Summary Judgment (docket number 13-2) at 66-67; Exhibit B, Nolan's Deposition at 69:4-70:8.

[6] *See* Plaintiff's Response to Defendant's Statement of Material Facts in Support of Summary Judgment Motion (docket number 16-2) at 5, ¶ 62; *see also* Appendix to Plaintiff's Resistance to Defendant's Motion for Summary Judgment (docket number 16-4) at 3; Affidavit of Keevin Barkhoff, ¶ 18 (Nolan "indicated that I was earning as much as I would ever earn, and I made more than anyone else in the department anyway.").

instructions given by her manager. On December 18, 2007, Barkhoff was given a final warning for insubordination and lack of teamwork/cooperation. The incident report stated:

> The feedback and personal observations I have from this time period [(November 26, 2007 through December 14, 2007)] confirm that [Barkhoff] has not been conducting herself in a positive and professional manner. There have been complaints from CRM and suppliers of [Barkhoff] getting upset and hanging up during phone calls. At recent staff meetings [Barkhoff] has been abrupt and discourteous and has walked out. [Barkhoff] has displayed an extremely negative attitude combined with harsh criticism that has been disruptive to the purchasing environment. [Barkhoff's] actions and behavior do not represent the image and personal conduct desired for our purchasing staff at [Bossard].

*See* Bossard's Appendix to Defendant's Motion for Summary Judgment (docket number 13-2) at 191; Exhibit I, Incident Report. Prior to 2007, Barkhoff had never been disciplined by Bossard.

In January 2008, Kai von Buddenbrock became Director of Purchasing. Barkhoff alleges that shortly after he took over the Director of Purchasing position, she heard von Buddenbrock make statements on two occasions, that Bossard should hire young men so that Bossard could mold them in the way it wanted.[7] In April 2008, Bossard hired four younger men to work in the purchasing department.[8]

---

[7] *See* Bossard's Appendix to Defendant's Motion for Summary Judgment (docket number 13-2) at 23; Exhibit A, Barkhoff's Deposition at 110:16-17 (Barkhoff testified that von Buddenbrock stated "[w]e need to hire young males to mold them as we need to."); *see also* Appendix to Plaintiff's Resistance to Defendant's Motion for Summary Judgment (docket number 16-4) at 7; Affidavit of Keevin Barkhoff, ¶ 36 ("At several Purchasing department meetings with Kai Von Buddenbrock in the first quarter of 2008, [von Buddenbrock] stated that he thought the company needed to hire 'some young men' so we could mold them the way Bossard wanted them molded.").

[8] According to Barkhoff's affidavit, two of the men who were hired were between the ages of 20 and 30, one was between the ages of 25 and 35, and the other was between the ages of 40 and 48. *See* Appendix to Plaintiff's Resistance to Defendant's Motion for Summary Judgment (docket number 16-4) at 7; Affidavit of Keevin Barkhoff, ¶ 36.

In June 2008, eastern Iowa was affected by a major flood. On June 10, 2008, Bossard sent an email to employees advising them that if they needed to prepare for the flood at home or in their neighborhood, they could leave work to do so. After work on June 10, Barkhoff and her husband went to their lake home on Lake Delhi--near Manchester, Iowa--to check on their house and boat. Having already scheduled a vacation day for Friday, June 13, Barkhoff decided to stay at their lake home on June 11 and 12, to monitor the flood situation. On June 11, Barkhoff left a voicemail with the receptionist at Bossard, informing Bossard that she would not be at work on June 11 or 12, because she was staying at her home on Lake Delhi to monitor the flooding situation. Barkhoff had six days of vacation remaining when she decided to take off from work on June 11 and 12.

On June 12, 2008, von Buddenbrock emailed Barkhoff and received an out-of-office reply.[9] Von Buddenbrock emailed Shari Kriegel ("Kriegel"), Barkhoff's Team Leader, and inquired as to why Barkhoff was not at work. Kriegel replied that Barkhoff's daughter, also an employee at Bossard, informed her that Barkhoff was at her lake home on Lake Delhi monitoring the flooding situation. Because Barkhoff failed to show up for work and did not tell anyone at Bossard where she was, von Buddenbrock decided to terminate her from employment.[10]

On Monday, June 16, 2008, von Buddenbrock spoke with Nolan and Curtis Brustkern ("Brustkern"), another supervisor in the Purchasing Department, about whether they could turn Barkhoff around and get her to become a positive and productive employee again. Neither Nolan, nor Brustkern believed Barkhoff could be "turned around." After discussing the decision to terminate Barkhoff with his superior, von Buddenbrock informed Lynn Carter ("Carter"), Bossard's Human Resources Manager, that Barkhoff was going

---

[9] The record is unclear as to who set Barkhoff's out-of-office reply on her email.

[10] *See* Bossard's Statement of Material Facts in Support of Summary Judgment Motion (docket number 13-1) at 17, ¶ 98.

to be terminated because of her attitude.[11] Next, von Buddenbrock and Carter met with Barkhoff, and von Buddenbrock informed her that her employment relationship with Bossard needed to be ended. Carter told Barkhoff that she was terminated because her employment with Bossard was at-will.[12] Following her termination, two young men, both in their twenties, were hired in the Purchasing Department. The two individuals were interviewed in June 2008, and began working at Bossard on July 7, 2008. Other facts that are significant for making a determination on Bossard's Motion for Summary Judgment will be discussed, as necessary, in the Court's consideration of the legal issues presented.

## IV. LEGAL STANDARD FOR SUMMARY JUDGMENTS

Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

---

[11] In her deposition testimony, Carter stated:

Q:   And when you said, 'They told me the reason for termination,' who told you that? . . .
A:   I don't remember which one told me.
Q:   Okay. What did they say?
A:   Attitude.
Q:   Any more detail than that?
A:   No. I think [von Buddenbrock] brought up the incident with [Barkhoff] not being at work.
Q:   The previous week?
A:   Yes. And that was just -- I'm not sure how he said it, but it was basically just proving that it was an attitude issue.

See Bossard's Appendix to Defendant's Motion for Summary Judgment (docket number 13-2) at 156-57; Exhibit E, Carter's Deposition at 35:22-36:8. Barkhoff disputes Carter's deposition testimony because "[t]he termination report completed by Ms. Carter does not indicate any basis of termination related to attitude or performance." See Plaintiff's Response to Defendant's Statement of Material Facts in Support of Summary Judgment Motion (docket number 16-2) at 7, ¶ 103.

[12] Bossard's Employee Separation Report provides that the reason for separation was "At will." The report provides no other reason for Barkhoff's termination. See Bossard's Appendix to Defendant's Motion for Summary Judgment (docket number 13-2) at 202; Exhibit K.

law." FED. R. CIV. P. 56(c); *Rakes v. Life Investors Insurance Co. of America*, 582 F.3d 886, 893 (8th Cir. 2009) ("Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law."). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears the initial responsibility of informing the court of the basis for its motion, and must identify those portions of the record which it contends show a lack of a genuine issue of material fact. *Heisler v. Metropolitan Council*, 339 F.3d 622, 631 (8th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (same). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see, e.g., Baum v. Helget Gas Products, Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Roeben v. BG Excelsior Ltd. Partnership*, 545 F.3d 639, 642 (8th Cir. 2008) ("To survive summary judgment, a plaintiff must substantiate his [or her] allegations with enough probative evidence to support a finding in his [or her] favor."). "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

Furthermore, "summary judgment is disfavored in employment discrimination cases" because such cases are "inherently fact-based." *Simpson v. Des Moines Water Works*, 425 F.3d 538, 542 (8th Cir. 2005); *see also Mayer v. Nextel West Corp.*, 318 F.3d 803, 806 (8th Cir. 2003) ("'[S]ummary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based.'") (quoting *Keathley v. Ameritech Corp.*, 187 F.3d 915, 919 (8th Cir. 1999))). In an employment discrimination case, summary judgment should only be granted "if the evidence could not support any reasonable inference of discrimination." *Elnashar v. Speedway SuperAmerica, LLC*, 484 F.3d 1046, 1055 (8th Cir. 2007).

## V. DISCUSSION

### A. Sexual Harassment and Retaliation Claims

In Count IV of her Complaint, Barkhoff alleges that Bossard discriminated against her "with respect to the terms and conditions of her employment on the basis of her sex, allowed a sexually hostile and offensive atmosphere to exist at her place of employment, and retaliated against her" in violation of Iowa Code Chapter 216.[13] Bossard argues that it is entitled to summary judgment on Barkhoff's allegations of sexual harassment and retaliation because she failed to exhaust her administrative remedies on those claims. Specifically, Bossard argues that Barkhoff failed to allege sexual harassment or retaliation in her complaint filed with the ICRC. In her Resistance, Barkhoff states that she "withdraws the claims related to sexual harassment and retaliation."[14] Accordingly, the Court will not entertain Barkhoff's allegations of sexual harassment or retaliation in Count IV of her Complaint, and will focus solely on her claims of age and sex discrimination.

---

[13] *See* Complaint and Jury Demand (docket number 2) at 5, ¶ 34.

[14] *See* Barkhoff's Resistance to Defendant's Motion for Summary Judgment (docket number 16) at 1, ¶ 5.

## B. Age Discrimination

Under the ADEA, employers are forbidden from taking adverse employment actions against employees based on their age. *See* 29 U.S.C. § 623(a)(1); *Baker v. Silver Oak Senior Living Management Co., L.C.*, 581 F.3d 684, 688 (8th Cir. 2009); *Lewis v. St. Cloud State University*, 467 F.3d 1133, 1136 (8th Cir. 2006). A claim of intentional age discrimination may be established either through direct evidence of discrimination or through circumstantial evidence. *Fitzgerald v. Action, Inc.*, 521 F.3d 867, 876 (8th Cir. 2008) (citing *Carraher v. Target Corp.*, 503 F.3d 714, 716 (8th Cir. 2007)); *see also Loeb v. Best Buy Co., Inc.*, 537 F.3d 867, 872 (8th Cir. 2008) ("'To establish a claim of intentional age discrimination, a plaintiff may present direct evidence of such discrimination or may prove his claim through circumstantial evidence.'") (quotation omitted).

Bossard argues that Barkhoff "presents only circumstantial evidence of age discrimination" and, therefore, the case should be determined under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See King v. United States*, 553 F.3d 1156, 1160 (8th Cir. 2009) ("[W]here the plaintiff presents [circumstantial] evidence of discrimination, the court analyzes her claim under the burden-shifting framework set forth in *McDonnell Douglas*[.]"). Barkhoff contends, however, that there is direct evidence that her termination was based on her age due to comments made by the Director of Purchasing, Kai von Buddenbrock. Alternatively, Barkhoff asserts that under the *McDonnell Douglas* framework, she can establish a *prima facie* case of discrimination and generate a genuine issue of material fact regarding pretext, thereby precluding summary judgment.

### 1. Direct Evidence

If a plaintiff presents direct evidence of age discrimination, then the *McDonnell Douglas* burden-shifting analysis is inapplicable because "when direct evidence of discrimination exists, the plaintiff need not establish a prima facie case because creating an inference of discrimination is unnecessary." *Bashara v. Black Hills Corp.*, 26 F.3d

820, 823 (8th Cir. 1994) (citations omitted); *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) ("[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination. . . . The shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the 'plaintiff has his day in court despite the unavailability of direct evidence.' *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 (1st Cir. 1979)."). Direct evidence includes "'evidence of actions or remarks of the employer that reflect a discriminatory attitude,' 'comments which demonstrate a discriminatory animus in the decisional process,' or comments 'uttered by individuals closely involved in employment decisions.'" *King*, 553 F.3d at 1161 (quoting *King v. Hardesty*, 517 F.3d 1049, 1058 (8th Cir. 2008)). Direct evidence, however, does not include "'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process[.]'" *King*, 553 F.3d at 1160 (quoting *Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.*, 444 F.3d 961, 966 (8th Cir. 2006)).

Here, Barkhoff argues that the following facts constitute direct evidence of age discrimination:

> The evidence indicates that Kai Von Buddenbrock, on several occasions, made statements in Purchasing Department meetings that indicated that he thought young men should be hired by Bossard to be molded the way Bossard wanted. These statements occurred in early 2008. By April of 2008, [von Buddenbrock] was interviewing young men and hiring them to work in the Purchasing Department. He hired three men in the April-May timeframe, all of whom were in their 20's or 30's. He hired Kevin Winsted, another male who was somewhat older, later in the year, but before [Barkhoff's] termination. Then, at the time of [Barkhoff's] termination, interviews were being arranged with two other men in their 20's. These two men were hired as buyers on July 7, 2008.

*See* Plaintiff's Brief in Resistance to Defendant's Motion for Summary Judgment (docket number 16-1) at 7. Bossard argues that von Buddenbrock's comments do not constitute direct evidence of age discrimination. Specifically, Bossard argues that "[a]lthough von

Buddenbrock made the decision to terminate Barkhoff, she has not demonstrated a specific link between the alleged comment and her termination" because the comment was made more than six months before her termination.[15] Thus, Bossard contends that Barkhoff is "unable to prove her claim[] of age . . . discrimination by direct evidence of discrimination and must use the *McDonnell-Douglas* burden shifting analysis."[16]

In *Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149 (8th Cir. 2007), the Eighth Circuit Court of Appeals determined that a decisionmaker's comments that he wanted to hire "a bunch of young, dumb, and full of cum guys," and hire "young studs" to replace older sales people were not direct evidence of age discrimination. *Id.* at 1152-53. The Eighth Circuit explained that:

> Assuming Suzuki was a decisionmaker, Ramlet has not demonstrated a specific link between the comments and his termination. The comments were not related to the decisional process as the most recent occurred at least four months before Ramlet's termination, and both were made to employees not involved in the decisional process.

*Id.* at 1153. Because von Buddenbrock's comments were made at least six months before Barkhoff's termination, and Barkhoff has not demonstrated a specific link between the comments and her termination, the Court finds that the comments do not constitute direct evidence of age discrimination. Therefore, the Court must analyze Barkhoff's age discrimination claim under the *McDonnell Douglas* framework. *See id.*

### 2. *Circumstantial Evidence*

Because Barkhoff presents no direct evidence of age discrimination, the Court applies the analytical framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 729 (1973) to Barkhoff's age discrimination claim. Under the *McDonnell Douglas* burden-shifting framework, a plaintiff must first establish a *prima facie* case of discrimination.

---

[15] *See* Bossard's Brief in Support of Motion for Summary Judgment (docket number 14-1) at 7.

[16] *Id.* at 8.

*Ramlet*, 507 F.3d at 1153 (citing *McDonnell Douglas*, 411 U.S. at 802). If the plaintiff establishes a *prima facie* case of discrimination, then the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the employment decision. *Id.* If the employer provides such a reason, then the burden shifts back to the plaintiff to present evidence that the employer's proffered reason was pretext for age discrimination. *Id.* (citing *Haas v. Kelly Services*, Inc., 409 F.3d 1030, 1035 (8th Cir. 2005)).

### a. *Barkhoff's prima facie Case*

In order to establish a *prima facie* case of age discrimination, Barkhoff must show that: (1) At the time of her termination she was over 40 years of age; (2) she was otherwise qualified for the position she held; (3) she was discharged from employment; and (4) she was replaced by younger employees. *Loeb*, 537 F.3d at 872 (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000)). Bossard concedes that Barkhoff can establish the first three elements of her *prima facie* case of age discrimination. *See* Bossard's Brief in Support of Motion for Summary Judgment (docket number 14-1) at 8.

Bossard contends, however, that Barkhoff fails to establish the fourth element of her *prima facie* case. According to Bossard, Barkhoff's initial replacement was eleven years younger. Barkhoff's initial replacement resigned from her position less than two months after Barkhoff was terminated. The subsequent replacement was twenty years younger than Barkhoff. Bossard argues that "[t]he circumstances here do not give rise to an inference of discrimination[.]"[17]

In order to establish the fourth element of her *prima facie* case of age discrimination, Barkhoff must show that Bossard filled her position with an individual "'sufficiently younger to permit the inference of age discrimination.'" *Hammer v. Ashcroft*, 383 F.3d 722, 726 (8th Cir. 2004) (quoting *Schiltz v. Burlington N. R.R.*, 115 F.3d 1407, 1412 (8th Cir. 1997)). In making this determination, the Court bears in mind that "[t]he *McDonnell Douglas* framework was 'never intended to be rigid,

---

[17] *See* Bossard's Brief in Support of Motion for Summary Judgment (docket number 14-1) at 9.

mechanized, or ritualistic.'" *Hammer*, 383 F.3d at 726 (quoting *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978)); *see also Hindman v. Transkrit Corp.*, 145 F.3d 986, 991 (8th Cir. 1998) ("[T]he Supreme Court has held that 'the burden of establishing a prima facie case of disparate treatment is not onerous.' [*Texas Dept. of Community Affairs v.*] *Burdine*, 450 U.S. [248,] 253 [(1981)]."). Having considered the circumstances of this case, the Court finds that Barkhoff's replacements who were eleven and twenty years younger respectively, permits an inference of age discrimination. Accordingly, the Court determines that Barkhoff has established her *prima facie* case.

### b. Bossard's Legitimate Non-Discriminatory Reason

Because Barkhoff established a *prima facie* case of age discrimination, the burden shifts to Bossard to articulate a legitimate non-discriminatory reason for terminating Barkhoff. *See Ramlet*, 507 F.3d at 1153. Bossard's legitimate non-discriminatory reason for terminating Barkhoff was her attitude. *See Larry v. Potter*, 424 F.3d 849, 851 (8th Cir. 2005) (finding that an employee's negative work attitude was a legitimate non-discriminatory reason for terminating the employee); *see also Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1316 (8th Cir. 1996) (same). The Court finds that Bossard articulated a legitimate non-discriminatory reason for its decision to terminate Barkhoff. Accordingly, the burden shifts back to Barkhoff to present evidence that Bossard's proffered reason was merely a pretext for age discrimination. *See Ramlet*, 507 F.3d at 1153.

### c. Pretext

Prior to *Gross v. FBL Financial Services, Inc.*, ___ U.S. ___, 129 S. Ct. 2343 (2009), a plaintiff could avoid summary judgment "'if the evidence considered in its entirety (1) created a fact issue as to whether [the defendant's] proffered reasons are pretextual and (2) created a reasonable inference that age was a determinative factor in the adverse employment decision.'" *Loeb*, 537 F.3d at 872 (quoting *Lewis*, 467 F.3d at 1137). In *Gross*, however, the United States Supreme Court set forth a new standard for establishing a disparate treatment claim under the ADEA: "a plaintiff must prove that age

was the 'but-for' cause of the employer's adverse decision." 129 S. Ct. at 2350. The Supreme Court summarized its holding as follows:

> a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action. The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision.

*Id.* at 2352. Following *Gross*, the Eighth Circuit Court of Appeals explained:

> [Gross holds] that 'to establish a disparate treatment claim under the plain language of the ADEA, . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision.' There is no 'heightened evidentiary requirement' for plaintiffs to satisfy their burden of persuasion through 'direct evidence' as opposed to 'circumstantial evidence.' The rule is simply that 'a plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision.'

*Baker*, 581 F.3d at 688 (quotations omitted).

Having considered all of the evidence, and having viewed the record in the light most favorable to Barkhoff, the Court concludes that Barkhoff has presented a submissible case of age discrimination under the ADEA. In particular, von Buddenbrock's comments that Bossard should hire young men because they could be molded the way Bossard wanted, and Bossard's subsequent hiring of six younger men in Barkhoff's department between April 2008 and July 2008, is evidence that a reasonable jury could determine reflected a discriminatory attitude by a decisionmaker who participated in Barkhoff's termination. *See Baker*, 581 F.3d at 688. Additional evidence supporting Barkhoff's age discrimination claim is her allegation that Rick Nolan, one of her supervisors, questioned her regarding her retirement plans on several occasions each year, beginning in 2005.[18]

---

[18] *See* Plaintiff's Statement of Additional Material Facts in Resistance to
(continued...)

Furthermore, there is evidence that Bossard gave shifting explanations for Barkhoff's termination. When von Buddenbrock and Bossard's human resources manager, Lynn Carter, met with Barkhoff to inform her that she was terminated, Carter told Barkhoff the reason for her termination was "at-will" employment. Barkhoff's Separation Report from Bossard provides that the reason for separation was "At will." The report provides no other reason for Barkhoff's termination.[19] According to von Buddenbrock, the real reason for Barkhoff's termination was her attitude.[20] Neither von Buddenbrock, nor Carter informed Barkhoff that her attitude was the real reason for her termination. Additionally, von Buddenbrock indicated that his decision to terminate Barkhoff was based on her absence from work on June 11 and 12, 2008, while Barkhoff was monitoring her lake home during the 2008 flood.[21] Again, von Buddenbrock did not inform Barkhoff that this

---

[18] (...continued)
Defendant's Motion for Summary Judgment (docket number 16-3) at 1, ¶ 5; *see also* Appendix to Plaintiff's Resistance to Defendant's Motion for Summary Judgment (docket number 16-4) at 3; Affidavit of Keevin Barkhoff, ¶ 13 ("He seemed to be encouraging me to retire by his comments.").

[19] *See* Bossard's Appendix to Defendant's Motion for Summary Judgment (docket number 13-2) at 202; Exhibit K.

[20] *See* Bossard's Statement of Material Facts in Support of Summary Judgment Motion (docket number 13-1) at 17, ¶ 99. According to Carter, she did not inform Barkhoff that the reason for her termination was for attitude because she was "trying to not pour salt in the wound, so to speak. It was a difficult thing. In hindsight, I wish I had done that and explained it to [Barkhoff], what the reason was, but at this point, I thought it was less painful, considering that we were terminating someone that had worked for the company for so long." *See* Bossard's Appendix to Defendant's Motion for Summary Judgment (docket number 13-2) at 161; Exhibit E, Carter's Deposition at 44:3-10.

[21] *Id.*, ¶ 98. In his deposition, von Buddenbrock states that at the time, the decision to terminate Barkhoff was that "she didn't turn up for work some days before and nobody knew exactly where she was." *See* Bossard's Appendix to Defendant's Motion for Summary Judgment (docket number 13-2) at 137; Exhibit D, von Buddenbrock's Deposition at 59:21-23. Later in his deposition, von Buddenbrock states that Barkhoff's poor work ethic and negative behavior were factors in her termination; however, he admits
(continued...)

was a reason for her termination. *See Baker*, 581 F.3d at 689 ("Not every supplement to an employer's initial statement of reasons gives rise to an inference of pretext, but substantial variations raise suspicion.") (citation omitted). Taking all of this evidence together, the Court concludes that there is a genuine issue as to whether age was a "but-for" cause of Barkhoff's termination under the ADEA. *See Baker*, 581 F.3d at 690. Therefore, Bossard's motion for summary judgment on Barkhoff's federal age discrimination claim will be denied.

### 3. Barkhoff's State Age Discrimination Claim

Generally, when considering age discrimination claims brought under the ICRA, the Iowa courts "turn to federal law interpreting the Age Discrimination in Employment Act (ADEA)." *Weddum v. Davenport Community School District*, 750 N.W.2d 114, 118 (Iowa 2008) (citing *McMannes v. United Rentals, Inc.*, 371 F. Supp. 2d 1019, 1027 (N.D. Iowa 2005)); *see also Vivian v. Madison*, 601 N.W.2d 872, 873 (Iowa 1999) (providing that Iowa courts traditionally turn to federal law for guidance in evaluating the ICRA). "Federal law, however, is not controlling." *Vivian*, 601 N.W.2d at 873.

In this case, the analysis of Barkhoff's state claim is the same as the analysis under federal law, except for the causation standard for establishing age discrimination. Recently, in *Deboom v. Raining Rose, Inc.*, 772 N.W.2d 1, 13-14 (Iowa 2009), a case decided after *Gross*, the Iowa Supreme Court determined that the causation standard in discrimination cases under Iowa Code Chapter 216, is that a "plaintiff need only demonstrate 'termination occurred under circumstances giving rise to an inference of discrimination' and his or her status as a member of a protected class was *a* determining [or motivating] factor in the decision to terminate employment." *Deboom*, 772 N.W.2d at 13 (citations omitted). In *Schott v. Care Initiatives*, ___ F. Supp. 2d ___, 2009 WL 3297290 (N.D. Iowa 2009), the district court interpreted *Deboom* as follows:

---

[21](...continued)
that he never gave an oral or written warning or discussed poor work ethic or negative behavior with Barkhoff. *Id.* at 140; Exhibit D, von Buddenbrock's Deposition at 74:8-22.

> Notwithstanding that the Iowa Supreme Court did not mention *Gross* in its analysis, this court believes that it could not be clearer that the Iowa Supreme Court does *not* impose a 'but for' causation standard in any ICRA employment discrimination case, based on age or any other protected characteristic, and that the appropriate causation standard in such cases is 'motivating factor.' In short, the causation standards for [a plaintiff's] age discrimination claims under federal and state law are *different*, as a matter of law, even if the same analytical framework is otherwise applicable to the two claims.

*Id.* at *4. Applying the motivating factor standard, since the Court concludes that there is a genuine issue as to whether age was a 'but-for' cause of Barkhoff's termination under the ADEA, it necessarily follows that there is a genuine issue about whether age was a motivating factor in her termination. *See Baker*, 581 F.3d at 690 (Applying Minnesota law, the Eighth Circuit determined that "[b]ecause we conclude that there is a genuine issue as to whether age was a 'but-for' cause of Baker's termination under the ADEA, it follows that there is likewise a question for trial about whether age was a contributing factor."). Accordingly, Bossard's motion for summary judgment on Barkhoff's state age discrimination claim will also be denied.

### C. Sex Discrimination

Under Title VII, an employer may not "discharge any individual, or otherwise [] discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). There are two ways for an employee to survive summary judgment in a Title VII sex discrimination claim. *Tenge v. Phillips Modern Ag Co.*, 446 F.3d 903, 907 (8th Cir. 2006).[22] The first method for surviving summary judgment requires the employee to present direct evidence of discrimination. *Id.* If direct evidence is unavailable to the

---

[22] "[D]iscrimination claims alleged under the Iowa Civil Rights Act are analyzed in the same manner as their federal law counterparts." *Montgomery v. John Deere & Co.*, 169 F.3d 556, 558 n.3 (8th Cir. 1999). Thus, the Court will analyze both Plaintiff's Title VII and ICRA sex discrimination claims using federal law.

employee, then he or she may employ the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to establish an inference of unlawful discrimination. *Tenge*, 446 F.3d at 907.

### 1. Direct Evidence

Similar to Barkhoff's age discrimination claims, Bossard argues that Barkhoff fails to present direct evidence of sex discrimination; and therefore, the case should be determined under the *McDonnell Douglas* burden-shifting framework. Again, Barkhoff disagrees and contends that von Buddenbrock's comments that Bossard should hire young men because they are easily molded constitutes direct evidence of sex discrimination. Statements by decisionmakers that are unrelated to the termination decision are not considered direct evidence of discrimination. *See King*, 553 F.3d at 1160. Because von Buddenbrock's comments were made at least six months before Barkhoff's termination, and Barkhoff has not demonstrated a specific link between the comments and her termination, the Court finds that the comments do not constitute direct evidence of age discrimination. *See Ramlet*, 507 F.3d at 1153. Therefore, the Court must analyze Barkhoff's sex discrimination claim under the *McDonnell Douglas* framework. *Id.*

### 2. Circumstantial Evidence

Because Barkhoff presents no direct evidence of sex discrimination, the Court applies the analytical framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 729 (1973) to Barkhoff's sex discrimination claim. Under the burden-shifting analysis of *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of disparate treatment on the basis of sex. *Tenge*, 446 F.3d at 910. If the plaintiff does so, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment decision. *Id.* If the employer provides such a reason, then the burden shifts back to the plaintiff to present evidence that the employer's reason was mere pretext. *Id.*

### a. Barkhoff's Prima Facie Case

In order to establish a *prima facie* case of sex discrimination, Barkhoff must show that: "'(1) she was a member of the protected group; (2) she was qualified to perform the

job; (3) she suffered an adverse employment action; and (4) circumstances permit an inference of discrimination.'" *Lewis v. Heartland Inns of America, L.L.C.*, ___ F.3d ___, 2010 WL 184087 at *3 (8th Cir. 2010) (quoting *Bearden v. International Paper Co.*, 529 F.3d 828, 831 (8th Cir. 2008)). "The required prima facie showing is a 'flexible evidentiary standard' that was 'never intended to be rigid, mechanized, or ritualistic.'" *Lewis*, 2010 WL 184087 at *5 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

Similar to the age discrimination claims, Bossard concedes that Barkhoff can establish the first three elements of her *prima facie* case of sex discrimination. Bossard contends, however, that Barkhoff fails to establish the fourth element of her *prima facie* case because "she is unable to prove that she was replaced by a male."[23] Specifically, Bossard argues that the two males hired after Barkhoff's termination were assigned to different catalog groups within the Purchasing Department from the catalog group assigned to Barkhoff while she was employed at Bossard. Bossard points out that:

> At the time [the two males] started, Kim McLeish still had responsibility for Barkhoff's catalog group and after McLeish resigned in September 2008, Shari Kriegel assumed responsibility for the catalog group. Therefore, Barkhoff is unable to establish a prima facie case of sex discrimination.

*See* Bossard's Brief in Support of Motion for Summary Judgment (docket number 14-1) at 9-10.

In establishing a *prima facie* case, Bossard places too much emphasis on the fact that two women within the Purchasing Department took over Barkhoff's catalog group after she was terminated. "Title VII has been interpreted to require only that, in addition to the first three elements of a prima facie case, the plaintiff demonstrate that his or her discharge occurred in 'circumstances which allow the court to infer unlawful discrimination.'" *Walker v. St. Anthony's Medical Center*, 881 F.2d 554, 558 (8th Cir.

---

[23] *See* Bossard's Brief in Support of Motion for Summary Judgment (docket number 14-1) at 9.

1989) (quoting *Craik v. Minnesota State University Board*, 731 F.2d 465, 469 (8th Cir. 1984)); *see also Lewis*, 2010 WL 184087 at *5 ("The touchstone inquiry remains whether circumstances permit a reasonable inference of discrimination."); *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir. 1995) ("While [the] evidence [of discrimination] would not require a reasonable juror to return a verdict for the [plaintiff], it is sufficient to meet the fourth prongs minimal requirements of *some* evidence allowing for an inference of improper motivation."). In *Walker*, the Eighth Circuit further explained that:

> Certainly, if a woman alleging sex discrimination is replaced by a female, this fact is relevant in evaluating the employer's motive. Nevertheless, it is entirely conceivable that a woman discharged and eventually replaced by another woman may be able to establish that she was the object of impermissible discrimination related to her gender. The ultimate inquiry in any Title VII suit is whether the plaintiff has established that a prohibited factor played a determinative role in the employer's decision, . . . we also express some agreement with Walker's contention that the sex of her replacement, although a relevant consideration, is not necessarily a determinative factor in answer to either the initial inquiry of whether she established her prima facie case or the ultimate inquiry of whether she was the victim of discrimination.

881 F.2d at 558 (citations omitted).

Having considered the circumstances of this case, the Court finds that von Buddenbrock's comments that Bossard should hire young men because they are easily molded, coupled with the fact that two men were hired into the Purchasing Department shortly after Barkhoff was terminated, is sufficient to permit a reasonable inference of sex discrimination for purposes of Barkhoff's *prima facie* case. Therefore, the Court determines that Barkhoff has established her *prima facie* case.

### b.    *Bossard's Legitimate Non-Discriminatory Reason*

Because Barkhoff established a *prima facie* case of age discrimination, the burden shifts to Bossard to articulate a legitimate non-discriminatory reason for terminating Barkhoff. *See Tenge*, 446 F.3d at 910. Bossard's legitimate non-discriminatory reason

for terminating Barkhoff was her attitude. *See Larry v. Potter*, 424 F.3d 849, 851 (8th Cir. 2005) (finding that an employee's negative work attitude was a legitimate non-discriminatory reason for terminating the employee); *see also Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1316 (8th Cir. 1996) (same). The Court finds that Bossard articulated a legitimate non-discriminatory reason for its decision to terminate Barkhoff. Accordingly, the burden shifts back to Barkhoff to present evidence that Bossard's proffered reason was merely a pretext for age discrimination. *See Tenge*, 446 F.3d at 910.

### c. *Pretext*

Because Bossard articulated a legitimate non-discriminatory reason for its decision to terminate Barkhoff, the burden shifts back to Barkhoff to present evidence that the employer's reason was mere pretext for unlawful discrimination. *See Tenge*, 446 F.3d at 910. In considering pretext at the summary judgment stage, "the issue is 'whether the plaintiff has sufficient evidence that unlawful discrimination was *a* motivating factor in the defendant's adverse employment action.'" *McCullough v. University of Arkansas for Medical Sciences*, 559 F.3d 855, 860-61 (8th Cir. 2009) (quoting *Roberts v. Park Nicollet Health Services*, 528 F.3d 1123, 1127 (8th Cir. 2008), in turn quoting *Griffith v. City of Des Moines*, 387 F.3d 735 (8th Cir. 2004)); *see also Lewis*, 2010 WL 184087 at *8 ("At [the summary judgment] stage of the case, the question is not whether [the plaintiff] will prevail on her claim but rather whether she has offered sufficient evidence from which a reasonable factfinder could find that she was discriminated against because of her sex.").

Having considered all of the evidence, and having viewed the record in the light most favorable to Barkhoff, the Court concludes that Barkhoff has presented sufficient evidence from which a reasonable factfinder could conclude that she was discriminated against based on her sex. *See Lewis*, 2010 WL 184087 at *8. In particular, von Buddenbrock's comments that Bossard should hire young men because they could be molded the way Bossard wanted, and Bossard's subsequent hiring of six younger men in Barkhoff's department between April 2008 and July 2008, is evidence from which a

reasonable jury could determine that sex was a motivating factor in Bossard's employment decision. *See Roberts*, 528 F.3d at 1128. Additionally, when von Buddenbrock and Bossard's human resources manager, Lynn Carter, met with Barkhoff to inform her that she was terminated, Carter told Barkhoff the reason for her termination was "at-will" employment. Barkhoff's Separation Report from Bossard provides that the reason for separation was "At will." The report provides no other reason for Barkhoff's termination.[24] According to von Buddenbrock, the real reason for Barkhoff's termination was her attitude.[25] Neither von Buddenbrock, nor Carter informed Barkhoff that her attitude was the real reason for her termination. Also, von Buddenbrock indicated that his decision to terminate Barkhoff was based on her absence from work on June 11 and 12, 2008, while Barkhoff was monitoring her lake home during the 2008 flood.[26] Again, von Buddenbrock did not inform Barkhoff that this was a reason for her termination. *See Roberts*, 528 F.3d at 1128- 29 ("[A] factfinder may deem the conflicting evidence probative on the question whether the employer's asserted reasons for the termination were true."); *see also Baker*, 581 F.3d at 689 ("Not every supplement to an employer's initial statement of reasons gives rise to an inference of pretext, but substantial variations raise suspicion."). Taking all of this evidence together, the Court concludes that there is a genuine issue as to whether sex was a "motivating factor" in Barkhoff's termination. *See McCullough*, 559 F.3d at 860-61; *see also Lewis*, 2010 WL 184087 at *8 ("At [the summary judgment] stage of the case, the question is not whether [the plaintiff] will prevail on he claim but rather whether she has offered sufficient evidence from which a reasonable factfinder could find that she was discriminated against because of her sex."). Therefore,

---

[24] *See* Bossard's Appendix to Defendant's Motion for Summary Judgment (docket number 13-2) at 202; Exhibit K.

[25] *See* footnote 18 above.

[26] *See* footnote 19 above.

Bossard's motion for summary judgment on Barkhoff's federal and state discrimination claims should be denied.

## *VI. CONCLUSION*

The Court concludes that there are genuine issues of material fact as to (1) whether age was a "but-for" cause of Barkhoff's termination, and (2) whether sex was a "motivating factor" in Barkhoff's termination from employment with Bossard. Therefore, Bossard's motion for summary judgment must be denied.

## *VII. ORDER*

**IT IS THEREFORE ORDERED:**

The Motion for Summary Judgment (docket number 13) filed by Defendant Bossard North America, Inc. on December 14, 2009, is hereby **DENIED**.

DATED this 28th day of _January_, 2010.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA